Filed 6/12/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> READYLINK HEALTHCARE, INC., <br><br>     Defendant and Appellant. | D075942 <br><br><br> (Super. Ct. No. PSC1500168) |

APPEAL from a judgment of the Superior Court of Riverside County, David M. Chapman, Judge. Reversed.

Roxborough, Pomerance, Nye & Adreani, Edward D. Pomerance, Vincent S. Gannuscio and David R. Ginsburg for Defendant and Appellant.

Anthony Lewis, Noah Graff, R. Timothy O'Connor, Eric P. Jones, Tony M. Chang and Seaton Tsai for Plaintiff and Respondent.

I.

INTRODUCTION

Defendant ReadyLink Healthcare, Inc. (ReadyLink) is a nurse staffing company that places nurses in hospitals, typically on a short-term basis. Plaintiff State Compensation Insurance Fund (SCIF) is a public enterprise fund created by statute as a workers' compensation insurer. Like private workers' compensation insurers, SCIF provides workers' compensation insurance to employers. The premiums that SCIF charges are based in part on the employer's payroll for a particular insurance year.

SCIF and ReadyLink have been engaged in a multiyear, multijurisdictional dispute over the final amount of workers' compensation insurance premium that ReadyLink owes to SCIF for the 2005 policy year, from September 1, 2005 to September 1, 2006, based on an audit of ReadyLink's payroll for that year performed by SCIF. During the audit, SCIF determined that certain payments made by ReadyLink to its nurses, which ReadyLink characterized as per diem payments, should instead be considered to be payroll under the relevant workers' compensation regulations.[1] SCIF's audit resulted in a significant increase in ReadyLink's premium for the policy year at issue.

ReadyLink challenged SCIF's application of the regulations by filing an appeal of the audit to the Insurance Commissioner. The Insurance Commissioner approved SCIF's application of the relevant regulation. A trial court rejected ReadyLink's petition for a

---

[1] Under the relevant regulations, per diem payments refer to "*reimbursement* for additional living expense by virtue of job location." (Italics added.)

2

writ of administrative mandamus to prohibit the Insurance Commissioner from enforcing its decision, and an appellate court affirmed the trial court's judgment.[2]

SCIF subsequently filed the action underlying this appeal, pleading causes of action including breach of contract, and seeking a judgment for damages against ReadyLink for its failure to pay the additional premium amount that SCIF had calculated was owed pursuant to its audit of ReadyLink's 2005 policy year payroll. ReadyLink answered SCIF's complaint and asserted a number of affirmative defenses, including estoppel, waiver, and fraud. ReadyLink was later granted leave to file an amended answer, in which it provided additional factual allegations supporting its affirmative defenses.

SCIF moved for judgment on the pleadings, claiming that the issue of the premium that ReadyLink owed for the 2005 policy year had been previously determined in the administrative proceeding and had been affirmed by subsequent judicial review of the administrative decision, and further claiming that issues related to ReadyLink's affirmative defenses had also been litigated in the prior proceedings. The trial court agreed with SCIF and concluded that SCIF's "action was necessary to reduce SCIF's

---

[2] ReadyLink also filed a separate putative class action in federal court, seeking a declaratory judgment that federal tax law preempted the Insurance Commissioner's decision regarding what an employer must demonstrate in order for per diem payments to be excluded from payroll calculations for purposes of workers compensation. ReadyLink's federal lawsuit was ultimately dismissed, and the dismissal was upheld on appeal on the ground of issue preclusion, in view of an intervening California Court of Appeal opinion rejecting the federal preemption argument.

3

claim to the premium owed to a judgment," and that "[t]he amount owed is precisely what was determined in the underlying administrative decision and appeals."  The trial court granted SCIF's motion for judgment on the pleadings and entered a judgment in favor of SCIF in the amount of $555,327.53, plus prejudgment interest of $571,606.99.

On appeal, ReadyLink contends that the trial court erred in granting SCIF's motion for judgment on the pleadings, and also asserts that the trial court erred in denying ReadyLink's motions to compel further discovery responses from SCIF.  According to ReadyLink, the trial court erred in concluding that the amount of premium it owes SCIF for the 2005 policy year was determined in prior proceedings.  ReadyLink concedes that it previously litigated and lost its challenge to SCIF's decision to include per diem amounts as payroll for the 2005 insurance year, but argues that it has never had the opportunity to challenge whether SCIF otherwise properly calculated the premium amount that it claims is due, pursuant to the terms of the contract between the parties, or whether SCIF's past conduct, which ReadyLink alleges includes SCIF's acceptance of ReadyLink's exclusions of its per diem payments from payroll in prior policy years and SCIF's exclusion of per diem amounts in paying out on workers' compensation claims filed by ReadyLink employees, might bar SCIF from being entitled to collect that premium amount under the contract.

We agree with ReadyLink that the trial court erred in granting SCIF's motion for judgment on the pleadings.  A full review of the collateral administrative and judicial proceedings demonstrates that ReadyLink and SCIF have not previously litigated the vast majority of issues raised by SCIF's action seeking to collect additional premium amounts

4

from ReadyLink, and further reveals that those issues could not have been litigated in the administrative action. We therefore reverse the judgment, as well as the court's interlocutory order denying ReadyLink's motion to compel further discovery responses from SCIF. We remand the matter for further proceedings.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

### 1. *Background regarding ReadyLink and its payments to its nurse employees*

Appellant ReadyLink is a nurse staffing company based in Thousand Palms, California. It contracts with registered nurses, licensed vocational nurses, and certified nursing assistants from throughout the United States and places them at hospitals.

During the relevant time period, ReadyLink paid its nurses an hourly wage and, with respect to its California nurses for whom the workers' compensation insurance is at issue in this case, also paid a "per diem" amount. The per diem component that ReadyLink relied on in paying its nurses was calculated using location-specific federal tables, known as "CONUS" tables. ReadyLink pays the per diem to nurses as an expense, which is taken from its general and administrative account, rather than as payroll.

2. *SCIF's role as ReadyLink's workers' compensation insurer*

SCIF is a public enterprise fund, created pursuant to Insurance Code section 11770 et seq., as a workers' compensation insurer.[3]  In September 2000, ReadyLink applied for workers' compensation insurance through SCIF, and SCIF issued a policy to ReadyLink. ReadyLink's workers' compensation policy with SCIF was renewed annually until ReadyLink cancelled its coverage with SCIF in February 2007.

Pursuant to the terms of the insurance policy, at the end of each policy year, SCIF was permitted to audit ReadyLink's payroll records to determine the amount of wages that ReadyLink had paid to its employees that year, and to use that amount to determine the final premium owed.  Workers' compensation insurers report the results of such audits to the Workers' Compensation Insurance Rating Bureau (WCIRB), which uses the data supplied to support its classification and rating systems.  (*ReadyLink Healthcare*, *supra*,

---

3    As the court in *ReadyLink Healthcare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1169 (*ReadyLink Healthcare*) described it, "SCIF is a quasi-public company created by the Legislature to ensure that mandatory workers' compensation insurance will be available to California employers."  By statute, SCIF is required to be "self-supporting" and is to "be fairly competitive with other [workers' compensation] insurers."  (Ins. Code, § 11775.)

210 Cal.App.4th at p. 1169.)[4]  SCIF conducted routine audits for ReadyLink's 2001, 2002, 2003, and 2004 policy years.  In each of those years, SCIF did not question ReadyLink's use of the per diem payment system, thereby essentially permitting ReadyLink to exclude the per diem payments from its payroll calculation for purposes determining the amount of its premium.  According to a declaration submitted by ReadyLink's Executive Vice President, during these policy years, SCIF paid out workers' compensation benefits to ReadyLink's injured employees and excluded the per diem amounts when calculating salary replacement.

---

[4]     Workers' compensation insurance is regulated by the Insurance Commissioner. "Each workers' compensation insurer must report claims data to a rating organization designated by the Insurance Commissioner.  (§§ 11734, subd. (b), 11751.5.)  'To achieve a uniform system for accurately recording and analyzing data, Insurance Code section 11751.5 authorizes the Insurance Commissioner to adopt "reasonable rules and statistical plans" for reporting loss and expense information.'  (*Simi Corp. v. Garamendi* [(2003)] 109 Cal.App.4th [1496,] 1500–1501.)  To achieve this end, the Rating Bureau publishes the California Workers' Compensation Uniform Statistical Reporting Plan—1995 ([USRP]; available at <https://wcirbonline.org/wcirb/root/pdf/usrp_ic_regs_only.pdf> [as of Feb. 16, 2012]) and the California Workers' Compensation Experience Rating Plan— 1995 (Experience Rating Plan; available at <https://www.wcirbonline. org/wcirb/root/pdf/erp_ic_regs_only.pdf> [as of Feb. 16, 2012]).  The plans are compendia of administrative rules and regulations governing the issuance of workers' compensation coverage by SCIF and other carriers.  They set forth classifications, rates and rating systems approved by the commissioner pursuant to sections 11658 and 11730 et seq. and have been incorporated by reference into the California Code of Regulations. (Cal. Code Regs., tit. 10, §§ 2318.6, 2353.1.)"  (*Allied Interstate Inc. v. Sessions Payroll Management, Inc.* (2012) 203 Cal.App.4th 808, 818–819.)

3. *SCIF's audit of the 2005 policy year and invoice for additional premiums based on the inclusion of per diem payments as payroll*

SCIF began its audit of ReadyLink's 2005 policy year in January 2007. During the audit of the 2005 policy year, SCIF requested from ReadyLink information regarding its per diem program. A senior auditor in SCIF's "[S]pecial [R]isk [D]ivision" had noticed that ReadyLink was paying its nurses a minimum wage of approximately $6.75 an hour and providing them with unusually high stipulated per diem amounts. This senior auditor had conducted dozens of audits of nurse staffing agencies and registries and had never before seen a nurse staffing agency pay more than 50 percent of its remuneration to nurses in the form of per diem payments; nor had she seen a nurse staffing agency pay its nurses hourly wages that were significantly below the average hourly rate that was typically paid to nurses who were trained, licensed, and registered nurses in California. (*ReadyLink Healthcare*, *supra*, 210 Cal.App.4th at 1170.) The auditor questioned ReadyLink regarding its per diem payments and requested documentation to substantiate that the per diem payments met the standards for such payments set forth in the USRP. ReadyLink responded to SCIF's inquiries by stating that ReadyLink was in compliance with federal per diem guidelines. ReadyLink provided no additional documentation to SCIF regarding its per diem payment program.

SCIF provided ReadyLink with its final audit for the 2005 policy year in June 2007. The audit categorized ReadyLink's *per diem* payments to nurses during the policy year as payroll for reporting purposes, and included the per diem amounts in calculating ReadyLink's final premium for the policy year. SCIF determined that with the per diem

8

payments included as payroll, ReadyLink owed more than $550,000[5] in additional

premium payments for the 2005 policy year.[6]

    4. *ReadyLink's appeal of SCIF's decision to include the per diem amount as payroll in calculating ReadyLink's 2005 premium to the Department of Insurance*

ReadyLink disputed SCIF's decision to include the per diem amounts as payroll

under the USRP rules, and SCIF referred the dispute to its internal customer assistance

program. (*ReadyLink Healthcare*, *supra*, 210 Cal.App.4th at p. 1170.) SCIF's internal

customer assistance program "requested that ReadyLink provide 'verifiable

documentation' of the per diem payments, in the form of 'invoices, receipts and other

third-party paperwork' showing reimbursement for 'travel expenses, lodging, food

expenses, and the like.' " (*Ibid.*) "ReadyLink did not provide any documentation" in

response to this request. (*Ibid.*) In the absence of documentation to support ReadyLink's

assertion that the per diem payments were made to reimburse nurses for their travel

expenses while away from home, rather than having been made to compensate them for

their nursing services, SCIF's internal customer assistance program determined that the

---

5    In the breach of contract action from which this appeal arises, SCIF contends that the amount of additional premium is $555,327.53. In an administrative decision issued by an Administrative Law Judge (ALJ) and adopted by the Insurance Commissioner arising from ReadyLink's appeal of SCIF inclusion of the per diem amounts as payroll in its final audit—a decision that we discuss further below—the ALJ identifies the amount of additional premium that SCIF was claiming as being due as $570,000.

6    Beginning in September 2007, the IRS began a tax audit of ReadyLink for tax years 2004, 2005, and 2006. At the conclusion of that audit, the IRS tax auditor informed ReadyLink that he "was proposing no changes to ReadyLink's tax return."

per diem amounts were properly included in the adjusted premium calculation for the 2005 policy year.  (*Ibid.*)

In April 2008, ReadyLink appealed SCIF's audit decision to include per diem amounts as payroll to the California Department of Insurance (DOI appeal).[7]  The issue

---

[7]     Although the ALJ's Proposed Decision states that ReadyLink filed its appeal "pursuant to California Insurance Code section 11753.1," the trial court that decided ReadyLink's subsequent petition for a writ of administrative mandamus states that ReadyLink "appealed . . . to the California Department of Insurance's Administrative Hearing Bureau, pursuant to California Insurance Code Section 11737(f)."  On appeal, ReadyLink suggests that it was proceeding pursuant to Insurance Code section 11753.1, arguing that its appeal related to the "reclassification of per diem payments . . . [as] payroll."  (Italics omitted.)  A document in the record that SCIF identified in the underlying trial court proceeding in this case as being "ReadyLink's Administrative Appeal" and that appears to be a letter dated June 2, 2008, from an attorney for ReadyLink to the ALJ, does not identify any statutory provision as the basis for ReadyLink's appeal of SCIF's decision regarding how to calculate payroll to the Insurance Commissioner.

A review of the two provisions of the Insurance Code that are referenced in the record as providing the basis for ReadyLink's administrative appeal does not definitively clarify under which statutory provision ReadyLink proceeded, but does suggest that subdivision (b) of section 11753.1 may provide the most applicable statutory basis for ReadyLink's appeal to the Insurance Commissioner.

Insurance Code section 11753.1 provides in relevant part:

"(a) Any person aggrieved by any decision, action, or omission to act of a rating organization may request that the rating organization reconsider the decision, action, or omission.  If the request for reconsideration is rejected or is not acted upon within 30 days by the rating organization, the person requesting reconsideration may, within a reasonable time, appeal from the decision, action, or omission of the rating organization.  The appeal shall be made to the commissioner by filing a written complaint and request for a hearing specifying the grounds relied upon. . . .

"(b) Any insurer adopting a change in the classification assignment of an employer that results in an increased premium shall notify the employer in writing . . . .  Any employer receiving this notice shall

10

to be decided in that appeal, as stated by the ALJ, was: "For policy year 2005, did SCIF properly include per diem payments made to registry nurses as 'payroll' or 'remuneration' pursuant to USRP, Part 3, Section V?" As explained by the ALJ, the USRP defines per diem payments as "reimbursement for additional living expense by virtue of job location." The ALJ further explained that these amounts "shall not be considered payroll if 'the amount is reasonable and the employer's records show that the employee worked at a job location that would have required the employee to incur additional expenses not normally assumed by the employee.' " The ALJ noted that whether SCIF could properly include ReadyLink's per diem payments as payroll constituted a question of first impression.

The DOI appeal proceeded through discovery, and the ALJ conducted a three-day hearing on March 25–27, 2009. After the hearing, and after considering the parties'

---

have the right to request reconsideration and appeal the reclassification pursuant to this section."

Insurance Code section 11737, subdivision (f) provides in relevant part:

"(f) Every insurer or rating organization shall provide within this state reasonable means whereby any person aggrieved by the application of its filings may be heard by the insurer or rating organization on written request to review the manner in which the rating system has been applied in connection with the insurance afforded or offered. . . . Any party affected by the action of the insurer or rating organization on the request may appeal, within 30 days after written notice of the action, to the commissioner who, after a hearing held within 60 days from the date on which the party requests the appeal, or longer upon agreement of the parties and not less than 10 days' written notice to the appellant and to the insurer or rating organization, may affirm, modify, or reverse that action. . . ."

11

posthearing briefing, the ALJ issued a 40-page Proposed Decision, dated August 6, 2009.

In the Proposed Decision, the ALJ stated, among other things:

> "Appellant [ReadyLink] has not met its burden of proof to show
> SCIF's 2005 payroll calculations were improper with regard to the
> inclusion of per diem monies. More specifically, Appellant failed to
> prove the per diem amounts paid to its employees were 'reasonable'
> and further failed to prove the nurses worked in locations that
> required them to incur additional expenses not normally assumed."

In reaching this conclusion, the ALJ specifically found that of the 259 nurses ReadyLink employed during the 2005 policy year, 142 of them lived within 50 miles of the hospitals to which they had been assigned, and as to the remaining 117, there was an absence of "any facts demonstrating [that] these 117 employees actually had a separate residence or that they incurred duplicate living expenses while in ReadyLink's employ as required by the plain language of the USRP."[8] Thus, "all per diem payments made to [the 142 nurses who lived within 50 miles of their assignments] are properly considered payroll for premium calculation purposes" and "all per diem payments made to [the remaining 117 nurses for whom there was no demonstration of the incurring of duplicate living expenses] must be included in ReadyLink's payroll calculation for workers' compensation purposes."

The ALJ's Proposed Decision concluded with the following one-sentence order, "SCIF's decision regarding the 2005 policy year audit is affirmed."

---

[8] The ALJ noted that a "taxpayer [who] continuously travels and thus does not duplicate substantial, continuous living expenses for a permanent home . . . may be considered 'itinerant' and thus ineligible for any travel deductions."

The Insurance Commissioner adopted the ALJ's Proposed Decision and designated the decision as "precedential" by way of an order filed September 30, 2009.

5. *ReadyLink's petition for writ of administrative mandamus in the Superior Court and its appeal of the trial court's denial of its petition*

ReadyLink sought judicial review of the Insurance Commissioner's decision by petitioning the superior court for a peremptory writ of administrative mandamus under Code of Civil Procedure section 1094.5. In its petition, ReadyLink argued: "(1) the Commissioner exceeded his authority by effectively promulgating a 'new' regulation without proceeding through the required public hearing process; (2) the new rule was improperly applied retroactively to ReadyLink; and (3) the Commissioner failed to recognize that the IRS regulations [regarding per diem payments] are presumptively reasonable." (*ReadyLink Healthcare*, *supra*, 210 Cal.App.4th at p. 1172.)

The trial court issued a 10-page ruling denying ReadyLink's petition. (*ReadyLink Healthcare*, *supra*, 210 Cal.App.4th at p. 1172.) ReadyLink appealed the trial court's denial of the petition to the Second District Court of Appeal. (*Ibid.*)

The appellate court affirmed the trial court's ruling denying ReadyLink's petition for a peremptory writ of administrative mandamus. (*ReadyLink Healthcare*, *supra*, 210 Cal.App.4th at p. 1180.) In reviewing the trial court's judgment, the appellate court concluded that (1) the trial court had applied the correct standard of review in considering ReadyLink's writ petition; (2) the Insurance Commissioner's decision was not preempted by federal tax law, as ReadyLink had argued for the first time on appeal; (3) the Insurance Commissioner's decision did not constitute a "new regulation" for which notice

13

and a public hearing would be required because the Insurance Commissioner had merely "interpreted the USRP's subsistence payments rule to determine whether ReadyLink's per diem payments constituted payroll"; and (4) the equitable considerations that ReadyLink raised did not prevent the "retroactive" application of the Insurance Commissioner's decision to a prior policy year. (*Id.* at pp. 1172–1179.)

6. *ReadyLink's separate federal action*

While ReadyLink's appeal from the trial court's denial of its petition for a peremptory writ of administrative mandamus was pending, ReadyLink filed a putative class action lawsuit in federal district court against SCIF and the Insurance Commissioner. ReadyLink's "federal complaint alleged that IRS regulations preempted the [Insurance] Commissioner's decision, requested both declaratory and injunctive relief, and asserted various state-law damage claims." (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund* (9th Cir. 2014) 754 F.3d 754, 757.)

The federal district court issued an order granting the defendants' motions to dismiss, concluding that with respect to ReadyLink's request for declaratory and injunctive relief based on federal preemption, the requirements for abstention were met under *Younger v. Harris* (1971) 401 U.S. 37 (*Younger*), and, further concluding that it was appropriate to decline to exercise supplemental jurisdiction over the remaining state-law claims. (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, *supra*, 754 F.3d at p. 757.)

ReadyLink appealed the federal district court's judgment to the Ninth Circuit Court of Appeals. (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, *supra*,

14

754 F.3d at p. 756.)  While ReadyLink's federal appeal was pending, California's Second District Court of Appeal issued its opinion in *ReadyLink Healthcare*, *supra*, 210 Cal.App.4th 1166, and the California Supreme Court denied review (*ibid.*), rendering the Second District's opinion final.

In providing background relevant to its determination of ReadyLink's appeal, the Ninth Circuit described what had occurred in ReadyLink's appeal of SCIF's decision to include the per diem amounts in the calculation of payroll to the Insurance Commissioner as follows:

> "When SCIF audited ReadyLink for the 2005 policy year, it found that ReadyLink had failed to report certain per diem payments to employees as payroll, and billed ReadyLink for an additional premium of $555,327.53.  ReadyLink appealed that decision to the California Department of Insurance, see Cal. Ins. Code § 11737(f), and an administrative law judge (ALJ) approved SCIF's premium calculation."  (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, *supra*,754 F.3d at p. 757, italics omitted.)

In the sections of the opinion discussing whether the federal district court was correct in dismissing ReadyLink's complaint, the Ninth Circuit considered and decided two issues:  (1) Had the district court properly abstained from adjudicating ReadyLink's federal preemption argument on *Younger* abstention grounds? and (2) Given the issuance of an opinion by the California Second District Court of Appeal's during the intervening time, in which the state appellate court rejected ReadyLink's federal preemption argument, did principles of issue preclusion bar ReadyLink's claim for declaratory relief? (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, *supra*, 754 F.3d at pp. 757–760, 760–762.)  The Ninth Circuit determined that the district court had erred in

15

abstaining from adjudicating the federal preemption argument, but that ReadyLink was barred by the doctrine of issue preclusion from litigating its claim for declaratory relief. (*Ibid.*)

## B. *Procedural background*

### 1. *SCIF's complaint and ReadyLink's answer*

SCIF filed the action underlying this appeal in Riverside County Superior Court on January 13, 2015. SCIF alleged causes of action against ReadyLink for breach of contract, money due on an open book, and common count.[9]

According to SCIF's complaint, ReadyLink entered into a written insurance contract with SCIF that was effective between September 1, 2005 and September 1, 2006. SCIF alleged that ReadyLink had breached the insurance contract by 1) failing to accurately report all of its payroll, in that it had improperly characterized some of its payroll as expense reimbursement; and 2) failing to pay SCIF the full premium when due under the policy, as established pursuant to SCIF's audit of the 2005 payroll records. SCIF sought damages in the amount of $555,327.53, plus prejudgment interest at the legal rate.

ReadyLink filed its answer to SCIF's complaint in March 2015. The answer included a general denial and asserted nine affirmative defenses: failure to state a cause

---

9    In its briefing on appeal, SCIF refers to the underlying action as its "collection case."

of action, statute of limitations, waiver, estoppel, speculative damages, laches, ratification, unclean hands, and accord and satisfaction.[10]

### 2. *SCIF's Initial Motion for Judgment on the Pleadings*

In August 2016, SCIF filed a motion for judgment on the pleadings. SCIF argued that ReadyLink's "boilerplate" affirmative defenses had not been properly stated because ReadyLink had failed to allege any facts to support them. SCIF further argued that these defenses were barred by principles of collateral estoppel and res judicata. SCIF requested that the trial court grant its motion for judgment on the pleadings, specifically with respect to ReadyLink's affirmative defenses, without leave to amend.

After a hearing on September 9, 2016, the trial court granted SCIF's motion for judgment on the pleadings. The trial court concluded that the affirmative defenses, as stated in the answer, "fail[ed] to state facts sufficient to constitute a defense." However, the court granted ReadyLink leave to amend its answer. The trial court concluded that "[t]he claim preclusion aspect of res judicata does not apply because issues raised in the underlying actions concerned the Insurance Commissioner's determination that per diem payments were properly considered payroll while the issue in this action is whether the failure to pay the $555,327.53 is a breach of the parties' contract." The court was unsure whether "the issue preclusion aspect of res judicata, otherwise referred to as collateral

---

10    Pursuant to a meet and confer between the attorneys for the parties, ReadyLink apparently agreed to withdraw four of its affirmative defenses—failure to state a cause of action, statute of limitations, laches, and speculative damages.

17

estoppel, may apply."  However, because ReadyLink's answer failed to allege the facts necessary for the court to "analyze the effect of collateral estoppel," the court permitted ReadyLink to file an amended answer.

> 3. *ReadyLink's first amended answer and subsequent proceedings*

ReadyLink filed a first amended answer on September 14, 2016 in which it asserted six affirmative defenses—estoppel, ratification, fraud, unclean hands, waiver, and conflict with Insurance Code section 381.  The first amended answer detailed the facts supporting these affirmative defenses, including allegations that at the time it first purchased insurance from SCIF, ReadyLink had informed SCIF "about its compensation structure and fully disclosed its per diem to SCIF" (italics omitted), that SCIF had conducted multiple audits in prior policy years in which it had said nothing about ReadyLink's per diem payment structure and had not included per diem payments as payroll, that SCIF had previously calculated ReadyLink's annual premiums with knowledge of ReadyLink's per diem payment structure, and that ReadyLink had relied on SCIF's representations about the amount of premium that ReadyLink would be charged in deciding to purchase workers' compensation insurance from SCIF.

Just after ReadyLink filed its original answer, it commenced discovery by serving Requests to Produce, Requests for Admission, Special Interrogatories, and Form Interrogatories on SCIF.  Unhappy with what ReadyLink believed were "non-responsive" discovery responses from SCIF, and after meeting and conferring with SCIF's counsel, ReadyLink filed motions to compel further responses to its Requests to Produce, Form Interrogatories, and Special Interrogatories on November 8, 2016.

18

The trial court heard ReadyLink's motions to compel on March 15, 2017. The court denied all three motions on collateral estoppel grounds, stating, "It is clear from ReadyLink's Amended Answer that it seeks to relitigate the exact same issues already addressed before the Insurance Commission[er] and the Court of Appeal. Each of the assertions that ReadyLink makes in its Amended Answer were either expressly or implicitly addressed and rejected by the [C]ourt of [A]ppeal and cannot be relitigated in this action. The discovery sought by ReadyLink is to support their non-defensible affirmative defenses, which they are collaterally estopped from asserting in this action and therefore not relevant to this litigation. Accordingly, the court denies the motions in their entirety."[11]

4. *SCIF'S second motion for judgment on the pleadings*

On August 3, 2017, SCIF filed a motion for judgment on the pleadings directed to ReadyLink's first amended answer. The motion asserted generally that the "Amended Answer does not state facts sufficient to constitute a defense to the complaint" and that "ReadyLink is collaterally estopped from asserting all of the affirmative defenses alleged." SCIF further claimed that "[t]he parties litigated on the merits all of the issues surrounding State Fund's attempts to enforce the terms of the insurance policy contract between State Fund and Readylink for the 2005 policy year four times- prior [to] the present collection action- resulting in three published decisions." (Italics omitted.)

---

[11] ReadyLink filed a petition for writ of mandate in this court after the trial court denied its motions to compel; this court summarily denied the petition.

19

As to each affirmative defense asserted in ReadyLink's first amended answer, SCIF relied on language from the appellate court's opinion in *ReadyLink Healthcare*, *supra*, 210 Cal.App.4th 1166 to demonstrate that the issues underlying ReadyLink's affirmative defenses had been rejected by that court.  For example, SCIF relied on the appellate court's statement that "[the fact t]hat a sole IRS auditor or prior SCIF auditors did not discover that ReadyLink's per diem payments could not be substantiated is not evidence that ReadyLink's practices were correct or that it reasonably believed them to be correct."  (*Id.* at p. 1179.)  According to SCIF, this statement by the appellate court demonstrated that "ReadyLink's reliance [on SCIF's prior audits] was not reasonable."  SCIF also asserted that, "[a]s noted in ¶8 of the complaint, and repeatedly during this lawsuit, the parties litigated the issue of State Fund's damages in this matter at every possible level."[12]

ReadyLink filed an opposition to SCIF's motion for judgment on the pleadings.  In its opposition, ReadyLink contended that SCIF's pleadings failed to "sufficiently establish damages," by failing "to plead with particularity the contract terms giving rise to the amount owed."  ReadyLink asserted that SCIF's reliance on the policy provision that

---

[12]    Paragraph 8 of SCIF's Complaint states:  "State Fund's decision regarding the policy audit, and as such the premium bill for $555,327.53, was affirmed by the California Insurance Commissioner, Court of Appeal of California, Second Appellate District, and became final upon the California Supreme Court's denial of certiorari [*sic*].  Moreover, the federal court's dismissal of ReadyLink's related federal complaint was affirmed by the United States Court of Appeals for the Ninth Circuit based on issue preclusion."

states, " 'All premiums for this policy will be determined by our manuals of rules, rates, rating plans and classifications' " (boldface & italics omitted) was insufficient to establish damages because none of the "pertinent language of its manuals" was set forth in the complaint. ReadyLink also argued that it had never been provided the opportunity to litigate its affirmative defenses in any of the prior actions, and that in fact, it could not have litigated the issues raised by its affirmative defenses in the prior proceedings "because they were not relevant to the narrow issues decided in the prior proceedings." For example, ReadyLink noted that with respect to its affirmative defense of fraud, it had alleged that its decision to purchase insurance from SCIF was based on representations by SCIF that it would base its premium calculations on ReadyLink's accounting methods regarding its per diem program, which, ReadyLink further alleged, had been fully disclosed to SCIF prior to the inception of any of the policies SCIF issued to ReadyLink. ReadyLink also noted that "[t]here have been no express findings on the defenses ReadyLink raises in this case," and further argued that "[i]f these issues had been decided, SCIF would not have filed this action," suggesting that SCIF would not have had to file a breach of contract action if the issues raised in ReadyLink's affirmative defenses had in fact previously been litigated and determined.

The trial court held a hearing on SCIF's second motion for judgment on the pleadings on September 22, 2017. During argument on the motion, the trial court asked ReadyLink's counsel, "Didn't the United States Court of Appeal[s] confirm an issue that was litigated and/or, to use your words, could have been litigated regarding the premium calculation? And the Court said, quote, 'And an administrative law judge approved

21

SCIF's premium calculation.' That can only be fairly interpreted to mean that [what] the administrative law judge, at least so far as the U.S. Court of Appeal[s] for the Ninth Circuit [was concerned], determined[,] was a premium calculation and amount." ReadyLink's counsel attempted to explain that "it never was adjudicated in terms of the exact precise amount which was owed."

The trial court ultimately granted SCIF's second motion for judgment on the pleadings. In its written order, the court concluded that principles of issue preclusion prevented ReadyLink from relitigating the issue of the amount of premium that ReadyLink owed to SCIF for the 2005 policy year, stating, "This action was necessary to reduce SCIF's claim to the premium owed to a judgment. The amount owed is precisely what was determined in the underlying administrative decision and appeals." The court noted in its order that SCIF was seeking "to recover $555,327.53 in premiums for 2005." The court did not mention prejudgment interest.

5. *Entry of judgment and ReadyLink's motion to vacate the judgment*

SCIF's counsel served ReadyLink's counsel with a proposed judgment on October 11, 2017. SCIF had failed to provide ReadyLink with the required 10 days to make objections, as required by California Rules of Court, rule 3.1590(j), submitting its proposed judgment to the court just five days after the trial court issued its ruling. ReadyLink filed an objection to the proposed judgment on October 19, 2017; however, the trial court had already signed the proposed judgment on October 16.

The judgment signed by the court included interest on the judgment at the rate of 10 percent per annum dating from July 30, 2007. However, the issue of SCIF's

22

entitlement to prejudgment interest had not been addressed prior to that point in time. On October 24, 2017, ReadyLink filed a motion to vacate the judgment, arguing that the judgment impermissibly included prejudgment interest, which was not available under Civil Code section 3287, given that the parties had required the assistance of the court in fixing SCIF's damages.[13]

SCIF argued in opposition to ReadyLink's motion to vacate the judgment that the premium amount owed by ReadyLink was "established to a legal certainty" as a result of the single sentence in the Ninth Circuit Court of Appeals' opinion describing the prior history of the related administrative action before the Insurance Commissioner and reviewed by California state trial and appellate courts. SCIF further argued that the amount of damages became fixed when ReadyLink withdrew its affirmative defense of "speculative damages."

---

[13] Civil Code section 3287 reads in relevant part: "(a) A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day . . . ."
" ' "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." [Citations].' [Citation.] Thus, ' " '[t]he test for recovery of prejudgment interest under [Civil Code] section 3287, subdivision (a) is whether defendant actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount. [Citation.]' [Citations.]" ' " (*Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 729.)

In denying ReadyLink's motion to vacate the judgment, the trial court rejected ReadyLink's objections to the judgment, stating that the "objections are not well founded."

The trial court entered judgment on October 16, 2017.  The judgment awarded SCIF $555,327.53 "for the 2005 premium bill issued by Plaintiff on June 29, 2007" and awarded another $571,606.99 in prejudgment interest for the time period between July 30, 2007 and October 11, 2017.

SCIF filed notice of entry of judgment on ReadyLink on November 30, 2017. ReadyLink filed a timely notice of appeal from the judgment.

III.

DISCUSSION

A.  *Three requests for judicial notice*

While this appeal was pending, the parties filed three requests for judicial notice with this court.  As an initial matter, we address these requests for judicial notice.

1.  *ReadyLink's request for judicial notice filed June 15, 2018*

On June 15, 2018, ReadyLink filed a request that this court take judicial notice of "the State Compensation Insurance Fund 'Workers' Compensation Insurance — Rate

24

Filing Form' with the Department of Insurance for the year 2005, filed June 1, 2005."[14]

SCIF did not oppose ReadyLink's request for judicial notice of this document.

Although no opposition was filed to ReadyLink's request for judicial notice of certain portions of SCIF's 2005 rate filing, we deny the request on the ground that the materials are not relevant to our determination of the issues on appeal. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 (*Mangini*) [only relevant material is subject to judicial notice], overruled on other grounds by *In re Tobacco Cases II* (2007) 41 Cal.4th 1257.)

> 2. *SCIF's request for judicial notice filed October 16, 2018 and its related request for judicial notice filed November 21, 2018*

On October 16, 2018, SCIF filed a request for judicial notice and sought judicial notice of the following documents and records:

> "1. Exhibit A-Transcript of Hearing, Riverside County Superior Court Case No. PSC 1500168 State Compensation Insurance Fund v. ReadyLink Healthcare, Inc., Reporter's Transcript of Motion for Judgment on the Pleadings, Before the Honorable David M. Chapman September 22, 2017.

> "2. Exhibit B-Supplemental Brief in Support of Petitioner ReadyLink Healthcare, Inc.'s Petition for Writ of Administrative Mandamus, submitted to the Los Angeles Superior Court, in case No. BS 124590, *ReadyLink Healthcare, Inc. v. Steve Poizner, et al.* served on January 31, 2011 to be heard April 14, 2011.

---

14  The supporting declaration filed with the request for judicial notice indicates that ReadyLink seeks to "attach[ ] only those portions relevant to this appeal and cited in Appellant's Opening Brief," and is therefore seeking judicial notice of only some portions of the 200-page filing form.

"3. Exhibit C-State Compensation Insurance Fund's Discovery Request, filed with the Insurance Commissioner of the State of California on September 12, 2008, *In the Matter of the Appeal of ReadyLink Healthcare, Inc.*, Case No. AHB-WCA-08-14, and Appellant's Objections to SCIF's Discovery Request.

"4. Exhibit D-The California Department of Insurance Commissioner's Precedential Decision *In the Matter of the Appeal of Advanced Fuel Filtration Systems*[ ] (5/21/04) AHB-WCA-03-45.

"5. Exhibit E-The California Department of Insurance Commissioner's Precedential Decision *In the Matter of the Appeal of E M Machining* (11/29/01) File No. ALB –WCA-00-30.

"6. Exhibit F-Excerpt from Rassp & Herlick, California Workers' Compensation Law § 3.11 Insurance Premiums. [8] Employer-Insurer Disputes.

"7. Exhibit G-Excerpt from *Levine on California Workers' Compensation Premium and Insurance*, Copyright 2006, by International Risk Management Institute, Inc., p. 6.D.3."

On November 21, 2018, SCIF filed a second request for judicial notice that it identified as an "*abridged* request [for judicial notice filed] concurrently with its brief." (Italics added.)  In the document, SCIF requested that this court take judicial notice of the same documents for which it had sought judicial notice in its previous request for judicial

26

notice, with the exception of the first document, the "Transcript of Hearing, Riverside County Superior Court Case No. PSC 1500168."[15]

ReadyLink filed oppositions to both requests for judicial notice.

We grant SCIF's request for judicial notice of the following two documents, pursuant to Evidence Code section 452, subdivision (c), which permits a court to take judicial notice of the "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States":

> (1) "The California Department of Insurance Commissioner's Precedential Decision *In the Matter of the Appeal of Advanced Fuel Filtration Systems*[ ] (5/21/04) AHB-WCA-03-45."
>
> (2) "The California Department of Insurance Commissioner's Precedential Decision *In the Matter of the Appeal of E M Machining* (11/29/01) File No. ALB –WCA-00-30."

---

[15] SCIF indicated that the transcript at issue was already part of the record on appeal. As a result of SCIF eliminating what had been the document identified as "Exhibit A" in its October 16, 2018 request for judicial notice, each document listed in its November 21, 2018 request for judicial notice bears a different exhibit letter from the exhibit letter in the October filing. For example, what had been "Exhibit B" in the October 16, 2018 request for judicial notice, bears the title "Exhibit A" in the November 21, 2018 request for judicial notice. Because of the confusion that may be caused by this labeling, in addressing these documents here, we will refer to each exhibit by the title that SCIF used (e.g., "Supplemental Brief in Support of Petitioner ReadyLink Healthcare, Inc.'s Petition for Writ of Administrative Mandamus, submitted to the Los Angeles Superior Court, in case No. BS 124590, *ReadyLink Healthcare, Inc. v. Steve Poizner, et al.* served on January 31, 2011 to be heard April 14, 2011") rather than by their "Exhibit" indicators (e.g., "Exhibit A").

27

We deny SCIF's request for judicial notice of the remaining materials on the ground that they are not relevant to our determination of the issues on appeal (see *Mangini*, *supra*, 7 Cal.4th at p. 1063).

B. *The trial court erred in granting SCIF's motion for judgment on the pleadings*

ReadyLink challenges the trial court's decision to grant SCIF's motion for judgment on the pleadings, based on the court's stated conclusion that "[r]es judicata bars relitigation of the determination of the premium owed" (boldface & underscoring omitted). According to ReadyLink, the issues in this case are not "identical to" the issues in the prior administrative proceeding. ReadyLink contends that "while the ALJ ruled on how ReadyLink's *per diem* payments would be classified for workers' compensation premium purposes, no decision has ever touched on *the amount of premium* to which SCIF would be entitled" (second italics added). ReadyLink further contends that "[t]he prior litigation between the parties did not actually or necessarily decide SCIF's entitlement to damages" (bolding & some capitalization omitted). ReadyLink notes that most of the factual issues that must be determined with respect to SCIF's breach of contract claim against ReadyLink are issues that are distinct from the issues that were considered and decided in the administrative proceeding, the writ of administrative mandamus proceeding and appeal, and the separate federal proceeding, and include issues such as: (1) "Did SCIF fully perform under the contract of insurance"; (2) "Did ReadyLink breach by failing to pay premiums when due"; (3) "Did SCIF suffer damages as a result of any breach"; (4) "If [SCIF did suffer damages], *what [is the] amount of*

28

*those damages*" (italics added); and "Do any affirmative defenses apply to eliminate or reduce ReadyLink's liability."[16]

In response, SCIF asserts that the "audit clearly established the amount of premium owed" (boldface & some capitalization omitted) by ReadyLink. SCIF further contends that ReadyLink "argued exhaustive facts and contentions regarding all of its affirmative defenses in the prior litigation," such that it either previously litigated all of the issues relevant to its affirmative defenses or was required to have raised the issues with the Insurance Commissioner and failed to do so, thereby barring it from relitigating these issues in this action.

To determine whether, as the trial court concluded, principles of issue preclusion bar ReadyLink from litigating issues raised by SCIF's claims or the six affirmative defenses that ReadyLink raised in its first amended answer, we must examine the doctrines of res judicata and collateral estoppel, and the relationship of those principles to the administrative hearing and the subsequent judicial review of that administrative hearing, as well as the separate federal action. We then apply the preclusion doctrines to

---

16    We understand from ReadyLink's arguments presented on appeal and its arguments made before the trial court that it seeks to hold SCIF to its burden to prove the amount of damages it claims to have suffered in order to prevail on its breach of contract claim by having SCIF demonstrate the *accuracy* of its premium calculation—in other words, to have SCIF demonstrate that it used the correct inputs and applied the correct calculations in coming up with the final premium amount. ReadyLink fully concedes that it cannot challenge whether SCIF properly included per diem payments as payroll for purposes of calculating the premium amount, since that issue was litigated and determined in the prior proceedings.

determine whether the trial court was correct in concluding that the "amount owed" by ReadyLink under the parties' contract was "determined in the underlying administrative decision and appeals."

1. *Relevant legal standards on review from judgment on the pleadings*

A plaintiff is entitled to judgment on the pleadings if its complaint states a cause of action against the defendant and the defendant's answer does not state facts sufficient to constitute a defense. (Code Civ. Proc., § 438, subd. (c)(1)(A), (3)(A).)[17] " 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the [pleadings at issue], supplemented by any matter of which the trial court takes judicial notice, to determine whether [the party] has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling *de novo*, assuming the truth of all material facts properly pled.' " (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166 (*Angelucci*).)

2. *Preclusion doctrines*

"As generally understood, '[t]he doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy.' " (*People v. Barragan* (2004) 32 Cal.4th 236, 252 (*Barragan*), italics omitted.) " 'In its primary aspect,' commonly known as claim preclusion, [res judicata] 'operates as a bar to

---

17    Conversely, a defendant is entitled to judgment on the pleadings if the complaint does not state a cause of action against the defendant. (Code Civ. Proc., § 438, subd. (c)(1)(B), (3)(B).)

the maintenance of a second suit between the same parties on the same cause of action. [Citation.]' [Citation.] 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he prior judgment . . . "operates" ' in 'a second suit . . . based on a different cause of action . . . "as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." ' " (*Id.* at pp. 252–253.)

" 'The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, "rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." ' [Citations.]" (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 185.) Res judicata promotes judicial economy by precluding parties from engaging in the type of piecemeal litigation that may occur if a single cause of action is split into more than one lawsuit or if a particular issue has already been decided in an earlier lawsuit. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 (*Mycogen*).)

Although the res judicata doctrine encompasses both claim and issue preclusion, the term "res judicata" has sometimes been used by California courts to denote claim preclusion, while the term "collateral estoppel" has been used to refer to issue preclusion. (See *Mycogen*, *supra*, 28 Cal.4th at p. 896, fn. 7.) Given that "res judicata" has sometimes been used to refer to claim preclusion and at other times has been used in a broader sense to refer to both claim and issue preclusion, or even issue preclusion, only, (see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*)), we

31

will adopt the labels employed by the Supreme Court in *DKN Holdings* and will "use the terms 'claim preclusion' to describe the primary aspect of the res judicata doctrine and 'issue preclusion' to encompass the notion of collateral estoppel." (*Ibid.*)

" 'The prerequisite elements for applying the doctrine [of preclusion] to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.' " (*Barragan*, *supra*, 32 Cal.4th at p. 253.) However, there are some differences.

"Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.) California courts apply the "primary rights" theory in assessing whether two proceedings involve identical causes of action. (See *Mycogen*, *supra*, 28 Cal.4th at p. 904.) "The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of

that duty." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202.)[18]  Additionally, " '[i]f the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged . . . .  A party cannot by negligence or design withhold issues and litigate them in consecutive actions.  Hence the rule is that the prior judgment [constitutes claim preclusion] on matters which were raised or could have been raised, on matters litigated or litigable.' " (*Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 402, italics omitted.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action.  [Citation.]" (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.)  "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit[19] and (4) asserted against one who was a party in the first suit or one in privity with that party.  [Citations.]" (*DKN Holdings*, *supra*, at p. 825.)  If all four of the

---

18    A primary right is distinct from the legal theory on which liability is premised or the remedies that may be sought.  Thus, while a primary right may support multiple theories of liability or various forms of relief, it gives rise to a single, indivisible cause of action for purposes of applying claim preclusion principles. (*Mycogen*, *supra*, 28 Cal.4th at p. 904.)

19    "For purposes of [issue preclusion], an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)

requirements for issue preclusion are satisfied, a court then also determines whether application of preclusion would be consistent with the "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation."  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335.)

The "party who asserts claim or issue preclusion as a bar to further litigation bears the burden of proving that the requirements of the doctrine are satisfied."  (*Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 489 (*Hong Sang*).)

3.   *Analysis*

Although SCIF's briefing is somewhat confusing on this point, SCIF appears to contend that the administrative proceeding conclusively determined the amount that ReadyLink owes to SCIF under the contract (as the trial court apparently concluded when it stated that "[t]he amount owed is precisely what was determined in the underlying administrative decision"), or, in the alternative, that to the extent that the ALJ did not decide the amount of premium due, the ALJ's failure to do so resulted from ReadyLink's

34

failure to pursue or exhaust its administrative remedies.[20] We disagree with both

contentions.

        a.    *The issues raised by the complaint and ReadyLink's first amended*
              *answer are not identical to the issues determined in those prior*
              *proceedings*

SCIF maintains that ReadyLink "argued exhaustive facts and contentions

regarding all of its affirmative defenses in the prior litigation." However, SCIF does not

identify which "facts" or "contentions" it believes ReadyLink previously argued that

would bar its affirmative defenses and entitle SCIF to a judgment on its breach of

contract claim in this action, and also fails to identify where in the administrative record,

or in the record of any prior court proceeding, those facts or contentions were actually

raised.

---

[20]    In making its arguments on appeal, SCIF seemingly mixes and conflates the separate doctrines of issue preclusion, claim preclusion, and administrative exhaustion without drawing the necessary connections between or among the doctrines. For example, SCIF contends that ReadyLink was required to "first exhaust administrative remedies" when "seeking relief from excessive surcharges," and that ReadyLink "knew it had the duty to raise this issue [i.e., presumably the amount of the premium due] at the administrative hearing" in arguing that the trial court's ruling on the motion for judgment on the pleadings was correct. The exhaustion of administrative remedies doctrine provides a basis for a court to decline to act when requested by a plaintiff where that plaintiff has not first sought relief from the administrative agency. Without fully articulating the contours of its argument, SCIF appears to contend that because, in its view, ReadyLink was required to raise the issue of the amount of premium with the Insurance Commissioner under some theory of exhaustion of administrative remedies and failed to do so, ReadyLink could have litigated that issue in the administrative proceeding, such that either claim preclusion or issue preclusion should now bar it from litigating its affirmative defenses to SCIF's contract action.

SCIF's complaint in this case includes a claim for breach of contract, a common count for reasonable value, and a claim for "open book." The elements of a claim for breach of contract are: (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach; and (4) damage to plaintiff resulting from the breach. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal. 4th 811, 821.) A common count for reasonable value has the following elements: (1) plaintiff performed certain services for the defendant; (2) the reasonable value of those services; (3) the services were rendered at the request of the defendant; and (4) the services were unpaid. (*Haggerty v. Warner* (1953) 115 Cal.App.2d 468, 475.) The elements of an open book account cause of action are: "1. That [plaintiff] and [defendant] had financial transactions . . . ; [¶] 2. That [plaintiff] . . . kept [an] account of the debits and credits involved in the transactions; [¶] 3. That [defendant] owes [plaintiff] money on the account; and [¶] 4. The amount of money that [defendant] owes [plaintiff]." (CACI No. 372.) For every cause of action that SCIF has asserted, SCIF must establish the amount of money due (in the form of damages, reasonable value of services, or money due on an open book account).

ReadyLink's affirmative defenses to SCIF's complaint include estoppel, ratification, fraud, unclean hands, waiver, and violation of Insurance Code section 381.[21]

---

[21] Insurance Code section 381, subdivision (f) provides that an insurance policy shall specify "[e]ither: [¶] (1) A statement of the premium, or [¶] (2) If the insurance is of a character where the exact premium is only determinable upon the termination of the contract, a statement of the basis and rates upon which the final premium is to be determined and paid."

36

All of these affirmative defenses are based on ReadyLink's general factual allegations, which include the following assertions: that ReadyLink "was upfront with SCIF about its compensation structure and fully disclosed its per diem to SCIF" (italics omitted) when it purchased insurance from SCIF; that "[a]fter reviewing ReadyLink's [per diem reliant] compensation structure, and with full knowledge of that structure, SCIF represented to ReadyLink what ReadyLink's premiums would be based upon ReadyLink's [per diem reliant] compensation method"; that "[i]n deciding to purchase insurance from SCIF, ReadyLink reasonably relied upon SCIF's representation that it had fully reviewed ReadyLink's compensation formulas and that the premium SCIF was offering . . . was the premium SCIF would charge"; that "SCIF repeatedly audited ReadyLink for the 2000 through 2004 calendar years and did not say a peep to ReadyLink about whether ReadyLink's [per diem reliant] compensation formulas could lead to an additional premium down the road"; that "ReadyLink believed, and had every reason to believe, that SCIF had looked at ReadyLink's payroll practices and properly charge[d] premiums based on those practices"; that "SCIF paid [workers' compensation] claims [out] to nurses using the very salary schedules ReadyLink used[, which excluded per diem payments as wages]"; and that if "ReadyLink [had] known the truth about SCIF's intentions [to later contend ReadyLink did not properly classify all of its payroll as payroll], it would not have done business with SCIF."

A review of the record, including the ALJ's Proposed Decision as adopted by the Insurance Commissioner, clearly demonstrates that none of these factual allegations, nor the legal impact of such allegations with respect to SCIF's breach of contract/collection

37

action, was at issue in the administrative proceeding, much less decided by the ALJ. Further, although the trial court concluded that SCIF was entitled to judgment on the pleadings because, as the trial court stated, "[t]he amount owed is precisely what was determined in the underlying administrative decision and appeals," in fact, the ALJ's Proposed Decision demonstrates that the ALJ did not consider or determine the amount of premium that ReadyLink owes SCIF under the 2005 policy contract.

The single issue before the ALJ was whether SCIF's inclusion as payroll those amounts that ReadyLink paid to its employee nurses as per diems for the 2005 policy year complied with the USRP. Indeed, in a letter sent from the WCIRB to the ALJ assigned to decide ReadyLink's appeal, the WCIRB asserts that "[t]he matter under appeal is whether the monies that ReadyLink paid to its employees as 'subsistence payments' should be included as payroll." The letter further states: "The WCIRB has no first hand knowledge of the manner in which ReadyLink either compensates its employees or reimburses them for travel expenses. That said, pursuant to the above referenced section of Appendix III [of USRP, the Payroll Remuneration Table], should it be determined that the payments . . . should be excluded from payroll. [¶] If it is determined that the payments in question cannot reasonably be considered to be payments to cover an employee's additional expenses incurred based upon a job's location, then all or a portion of the monies should be included as payroll."

The ALJ defined the issue to be decided as whether SCIF had properly interpreted and applied the Insurance Commissioner's regulations for determining payroll to include ReadyLink's per diem payments to its employees; the ALJ did not define the issue to be

38

decided as whether the premium amount that SCIF had calculated as being due by ReadyLink was accurate. The ALJ introduced the matter by stating that the appeal was about a dispute "regarding the proper calculation of payroll *for premium and statistical reporting purposes under the terms of the California Workers' Compensation Uniform Statistical Reporting Plan*." (Italics added.) The ALJ identified the "Statement of Issues" as including a single issue: "1. For policy year 2005, did SCIF properly include per diem payments made to registry nurses as 'payroll' or 'remuneration' pursuant to USRP, Part 3, Section V?"

In determining this issue, the ALJ considered evidence regarding ReadyLink's per diem program, as well as evidence of the per diem programs of other nurse staffing companies and evidence provided by SCIF regarding its audit procedure. In her decision, the ALJ provided background regarding the relevant regulatory framework, including information regarding the WCIRB's function—i.e., "to collect accurate payroll and loss information regarding every California workers' compensation insurance policy." The ALJ noted that "[g]iven the critical nature of accurate data, every insurer must record and report its policy payroll and claims loss data to the WCIRB *pursuant to the rules in the USRP*." (Italics added.) Thus, as the ALJ viewed it, her task was to determine whether SCIF, as a workers' compensation insurer, was accurately reporting to the WCIRB the payroll amounts under its issued policies pursuant to the regulations governing how payroll is to be determined.

As the ALJ noted, the USRP excludes from payroll "[s]ubsistence payments" that "are considered to be reimbursements for the additional living expense[s] by virtue of job

39

location," and further allows that such excluded "[s]ubsistence payments" may be "stipulated per diem amounts" if " 'the amount is reasonable and the employer's records show that the employee worked at a job location that would have required the employee to incur additional expenses not normally assumed by the employee.' "  The ALJ explained that the USRP did not define " 'reasonable,' " nor did it provide guidelines as to what might constitute " 'additional expenses not normally assumed by the employee.' "  Thus, the ALJ set out to interpret the word " 'reasonable' " in the USRP's reference to stipulated per diem amounts, and also to interpret the meaning of the USRP's reference to records demonstrating that the employee was " 'working at a location that would have required an employee to incur additional expenses not normally assumed.' "  After providing interpretations of those portions of the USRP, the ALJ proceeded to apply those standards to the facts presented regarding ReadyLink's per diem payment program. The ALJ concluded that ReadyLink's stipulated per diem amount was not "reasonable" under the USRP, and that ReadyLink had failed to demonstrate that its nurses who received the per diem payments had been working in a location where they would have incurred additional living expenses that they would not have otherwise normally assumed.  As a result, the ALJ concluded that ReadyLink had not met its burden to demonstrate that SCIF had improperly included the per diem amounts paid to ReadyLink's nurse employees in calculating ReadyLink's 2005 policy year premium, and further concluded that it was therefore appropriate to affirm "SCIF's decision regarding the 2005 policy year audit."

40

It is clear from the entirety of the ALJ's written decision that the ALJ's seemingly broad statement—i.e., that "SCIF's decision regarding the 2005 policy year audit" was affirmed—would be more accurately stated as "SCIF's decision [to include as payroll those amounts that ReadyLink paid to its nurses as stipulated per diem payments] regarding the 2005 policy year audit" was affirmed. This is because, as noted, the sole issue that the ALJ determined in her Proposed Decision (and thus the sole issue determined by the Insurance Commissioner) was whether SCIF had correctly interpreted and applied the USRP standards regarding the inclusion of ReadyLink's per diem payment as payroll for use in calculating ReadyLink's premium.[22] Further, a review of

---

[22] At no point in the Proposed Decision did the ALJ make any comment about SCIF's calculation of *the dollar amount* of ReadyLink's premium, nor did she purport to suggest that the amount of premium that SCIF was claiming ReadyLink owed pursuant to the audit was in fact owed by ReadyLink. The ALJ made no comment regarding the validity of the insurance contract, the premium calculated pursuant to that contract, or the facts on which ReadyLink relies in asserting its affirmative defenses to SCIF's collection action. Indeed, the ALJ did not discuss any issues regarding the precontract conduct of ReadyLink or SCIF, or possible representations made by SCIF to ReadyLink prior to ReadyLink's decision to purchase insurance from SCIF.

41

the subsequent proceedings initiated by ReadyLink to challenge the Insurance

Commissioner's decision to adopt the ALJ's Proposed Decision also demonstrates that the

parties were not litigating either the amount of premium owed or the broad range of

issues that arise from the complaint in this collection action and the affirmative defenses

to the collection action asserted in the first amended answer.

In its ruling on ReadyLink's petition for a writ of administrative mandamus, the

trial court summarized the "dispute between [SCIF] and ReadyLink" as a dispute

"regarding the proper determination of Petitioner's total nurse payroll paid out during its

2005 policy period," which the court thereafter described as a question involving the

interpretation of the USRP.[23]  Absent from this description is any suggestion that the

---

At the administrative hearing, the ALJ specifically told the parties that she was *not* considering whether the final premium calculated by SCIF had been calculated correctly. At the hearing, counsel for ReadyLink expressed the following concern regarding exactly what occurred in this litigation:  "My concern, quite frankly, is I don't want a court ultimately to say that I'm precluded from challenging [SCIF's] entitlement to an amount of premium independent of whether a certain amount of payroll is reportable for USRP. [¶]  I do understand there's a relationship between the amount of payroll and the USRP and the amount of premium [finally calculated].  Ultimately, it [i.e., the final premium due and payable] depends on a lot of other factors too, re filings and conduct."  In response the ALJ stated, "Right.  And what I'm doing is ruling on the USRP and whether SCIF applied it accurately in this case. [¶] Ultimately, where [*sic*] you end up paying SCIF or any compromises made down the line, if I call it [i.e., the per diem amounts] payroll, is not something I get to rule on.  *And I don't get to say what the premium should be, either, because I don't actually know how it's calculated . . .* necessarily."  (Italics added.)

[23]    The trial court noted that "Insurance Code § 11737, provides a reasonable means by which any person may challenge the rating system that has been applied to them in connection with the insurance provided.  And, a party may appeal to the Commissioner, who may hold a hearing to determine whether an existing rating plan has been correctly applied to an employer.  [Fn. omitted.]  Insurance Code § 11737, subd. (f)."

dispute involved *other* questions, such as the total amount of the premium owed by ReadyLink, or whether SCIF's past conduct in relation to ReadyLink might provide a legal basis for ReadyLink to avoid having to pay the premium for the 2005 policy year as determined by SCIF.

However, the trial court's ruling does demonstrate that certain other issues related to the propriety of including per diem payments in payroll were also "actually litigated" and "decided" (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825) in the writ proceeding. Specifically, ReadyLink argued in favor of the issuance of a writ of administrative mandamus on four grounds, all addressed by the trial court in that proceeding: (1) that the Insurance Commissioner's application of the USRP to ReadyLink's per diem payment structure constituted a "[n]ew [r]egulation," and that the Insurance Commissioner had no authority to issue a new regulation; (2) that the Insurance Commissioner's interpretation of the USRP and his application of that interpretation to the facts of ReadyLink's per diem payment structure was impermissibly retroactive; (3) that the Insurance Commissioner was bound by the results of an IRS tax audit and/or was required to adopt IRS standards or rules in order to interpret the USRP's rules regarding payroll; and (4) that the Insurance Commissioner improperly exceeded his authority by addressing a "rate controversy" regarding the rates in State Fund rate filing. The trial court rejected all of ReadyLink's contentions and denied its petition for a writ of administrative mandamus. None of these issues involves a determination as to the final amount of premium that ReadyLink owes (after a determination of all of the relevant inputs and the appropriate

43

application of relevant calculations), or whether ReadyLink has any defenses to SCIF's collection action based on SCIF's conduct prior to the 2005 policy year.

The trial court's determination of these issues became final upon the affirmance of its judgment by the appellate court in *ReadyLink Healthcare*, *supra*, 210 Cal.App.4th at p. 1172, with review denied in the Supreme Court on February 13, 2013, and once the time for filing a petition for writ of certiorari to the United States Supreme Court passed. (See *People v. Buycks* (2018) 5 Cal.5th 857, 876 ["A judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari with the United States Supreme Court have expired.  [Citation.]"].)

A review of *ReadyLink Healthcare*, *supra*, 210 Cal.App.4th 1166, further demonstrates that the issues that remain to be decided in this collection action were not previously considered, let alone decided, in the appellate review from the writ proceeding.  The appellate court in *ReadyLink Healthcare* addressed ReadyLink's four claims of error:  (1) whether the trial court applied the correct standard of review in assessing ReadyLink's petition for a writ of administrative mandamus (*id.* at p. 1172); (2) whether the Insurance Commissioner's decision was preempted by federal law (*id.* at p. 1173); (3) whether the Insurance Commissioner's decision constituted a "new regulation" that required a public hearing and opportunity to comment under Insurance Code section 11750, subdivision (b) (*ReadyLink Healthcare*, s*upra*, at pp. 1177–1178); and (4) whether equitable considerations, including arguments that the Insurance Commissioner's decision constituted a new regulation, that "ReadyLink's recordkeeping practices were based on the advice of payroll and legal experts and passed muster with

44

the IRS," and that "SCIF's prior audits had excluded the same per diem payments from ReadyLink's payroll," required that the administrative decision not be applied to include the per diem payments as payroll for purposes of determining ReadyLink's premium for the 2005 policy year (*id.* at p. 1179).[24] None of these issues involves the question of the "amount" of premium "owed." Nor do these issues address the factual questions raised by ReadyLink's first amended answer, such as whether SCIF knew about ReadyLink's per diem payment structure before ReadyLink purchased insurance through SCIF, whether SCIF affirmatively represented to ReadyLink that its premiums would be calculated based on that per diem payment structure, or whether ReadyLink reasonably relied on such representations, if they occurred, in purchasing insurance through SCIF. Neither the Insurance Commissioner, the trial court nor the appellate court addressed whether, if the

---

[24] Although at least one of the "equitable considerations" raised by ReadyLink before the appellate court in *ReadyLink Healthcare*, *supra*, 210 Cal.App.4th 1166, sounds similar to the estoppel defense that ReadyLink argues it should be permitted to pursue in this contract action, the two issues are not identical. ReadyLink argued in *ReadyLink Healthcare* that the appellate court should reverse the trial court's denial of ReadyLink's petition for a writ of mandate in part on the ground that the ALJ should have interpreted the USRP rules differently, and should have determined that the USRP did not require the inclusion of ReadyLink's per diem payments as payroll because, among other things, SCIF had not included those per diem payments as payroll in calculating prior year payroll amounts. The appellate court in *ReadyLink Healthcare* rejected the idea that the Insurance Commissioner should have altered his interpretation of the USRP rules based on SCIF's prior conduct in applying those rules. However, this was not a determination that SCIF's prior conduct cannot form the basis of an equitable estoppel defense in response to a breach of contract claim. We do not make this distinction to suggest that ReadyLink will ultimately prevail on its equitable estoppel argument, but, rather, merely to explain that the equitable estoppel issue that ReadyLink seeks to raise in this case has not previously been litigated.

45

facts alleged by ReadyLink are true, they amount to fraud or waiver such that SCIF should be precluded from collecting a premium based on calculations that include the per diem payments as payroll.[25]

Further, none of ReadyLink's affirmative defenses to SCIF's collection action were relevant to the issues addressed by the Insurance Commissioner, the trial court or the appellate court, nor were they considered or decided in the collateral federal proceedings initiated by ReadyLink to challenge the Insurance Commissioner's adoption of the ALJ's decision. As we have already described, ReadyLink's putative class action lawsuit filed against SCIF and the Insurance Commissioner in the federal district court alleged that IRS regulations pertaining to per diem payments preempted the Insurance Commissioner's decision regarding the treatment of ReadyLink's per diem payments for purposes of calculating payroll for workers' compensation insurance under the USRP. (See *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, *supra*, 754 F.3d at p. 757.) The federal district court decided two issues in dismissing the case: (1) that the

---

[25]    For purposes of resolving a motion for judgment on the pleadings, a court must " 'assum[e] the truth of all material facts properly pled.' " (*Angelucci*, *supra*, 41 Cal.4th at p. 166.) For this reason, we must assume the truth of the facts alleged in ReadyLink's first amended answer, and, assuming their truth, consider their potential legal import. However, it is important to note that we do not intend to imply that ReadyLink will or will not prevail on any of its affirmative defenses. Rather, we conclude only that ReadyLink should have the opportunity to litigate the issues that it raises in defense of SCIF's collection action based on the allegations in its first amended answer, since these issues have not been the subject of prior litigation between the parties, and, as we discuss further in section III.B.3.b, *post*, ReadyLink could not properly have raised these issues in the prior administrative proceedings.

*Younger* requirements for abstention were met with respect to ReadyLink's request for declaratory and injunctive relief on federal preemption grounds, and (2) that it would decline to exercise supplemental jurisdiction over any remaining state-law claims. (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, *supra*, at p. 757.) Thus, the federal district court decided issues related solely to the propriety of a federal court deciding any of the issues raised in the complaint on their merits. Upon ReadyLink's appeal, the Ninth Circuit Court of Appeals also considered only two issues, albeit one issue considered by the trial court, and a second issue not considered by the trial court: (1) whether the *Younger* abstention doctrine provided grounds for the trial court to decline to adjudicate ReadyLink's claim for declaratory and injunctive relief based on federal preemption, and (2) whether principles of issue preclusion arising from the state appellate court's rejection of the federal preemption argument barred ReadyLink from relitigating the federal preemption argument. (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, at pp. 757–760, 760–762.) It is readily apparent that none of the issues addressed in the federal action, either at the district court or appellate court level, concerns the amount of premium owed by ReadyLink.

The trial and appellate courts in the federal action did not consider, much less decide, the question of the amount of premium actually owed by ReadyLink for workers compensation insurance for the 2005 policy year. However, in considering the issues raised on SCIF's motion for judgment on the pleadings, the trial court appears to have given undue weight to a single sentence in the Ninth Circuit Court of Appeals' opinion. Specifically, in a section providing background context regarding the collateral

47

administrative and court proceedings that ReadyLink had initiated in California forums, the Ninth Circuit described what it understood to have taken place in the administrative proceeding, summarizing that proceeding as follows:

> "When SCIF audited ReadyLink for the 2005 policy year, it found that ReadyLink had failed to report certain per diem payments to employees as payroll, and billed ReadyLink for an additional premium of $555,327.53. ReadyLink appealed that decision to the California Department of Insurance, see Cal. Ins. Code § 11737(f), and an administrative law judge (ALJ) approved SCIF's premium calculation." (*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, *supra*, 754 F.3d at p. 757.)

The trial court in this case seized on the Ninth Circuit's description of what the Ninth Circuit understood the ALJ to have done (i.e., "an administrative law judge (ALJ) approved SCIF's premium calculation") and appears to have concluded that the Ninth Circuit's descriptive statement regarding what it believed had occurred in the administrative proceeding should itself be given preclusive effect. In other words, the trial court appears to have concluded that the Ninth Circuit's statement that "an administrative law judge (ALJ) approved SCIF's premium calculation" was a determination, on the merits that the ALJ had determined, on the merits, that ReadyLink owed SCIF the additional premium *amount* that SCIF had charged ReadyLink.[26] The

---

[26] During arguments on SCIF's motion for judgment on the pleadings, the trial court made several comments that indicate that the court was laboring under the misconception that the issue of the amount of the premium had been "determined" by the Ninth Circuit when it described what the ALJ had done, including:

- "Didn't the United States Court of Appeal confirm an issue that was litigated and/or, to use your words, could have been litigated regarding the premium calculation? And the Court said, quote, 'And an administrative law judge approved

48

trial court thus relied on two levels of issue preclusion to bar ReadyLink from litigating

its affirmative defenses to SCIF's contract action. However, the question of what issues

had been considered and decided by the ALJ, or what other issues could have been raised

but were not, in the administrative proceeding was not before the Ninth Circuit; rather,

the Ninth Circuit was merely attempting to summarize what had occurred in prior

---

SCIF's premium calculation.' That can only be fairly interpreted to mean that the administrative law judge, at least so far as the U.S. Court of Appeal for the Ninth Circuit[ ] determined was a premium calculation and amount."

- "Going back to the U.S. Court of Appeals for the Ninth Circuit in which the U.S. Court of Appeals determined that the administrative law judge had, in fact, approved SCIF's premium calculation, my question to you, sir, is have you -- in any of your appeals, did you every attack the number for -- no, strike that -- did you ever attack either the amount of the premium or the manner in which the premium was calculated? And, if so, *wasn't that determined adverse to you when the court determined that the administrative law judge approved SCIF's premium calculation*?" (Italics added.)

- "My next question to you is *when you received the opinion from the U.S. Court of Appeals* in which that opinion states, quote, 'And an administrative law judge approved SCIF's premium calculation,' *did you seek any further appellate review of that finding*?" (Italics added.)

- "*Why doesn't that then dispose of the issue as to that finding* -- [¶] . . . [¶] . . . -- on a res judicata and collateral estoppel analysis?" (Italics added.)

These questions by the trial court demonstrate that the court appears to have believed that the Ninth Circuit had made a "finding" of fact or had "determined" that the issue of the amount of premium due had previously been determined, such that the Ninth Circuit's opinion had some sort of preclusive effect with respect to the amount of premium due. However, SCIF's attorney actually noted during these oral arguments that the issue of the amount of premium due from ReadyLink "didn't get adjudicated because it wasn't submitted by ReadyLink."

49

litigation between the parties. A loose description of the history of a collateral proceeding cannot form the basis of a preclusive determination of an issue on its merits. (See *Hernandez, supra*, 46 Cal.4th at p. 511 ["For purposes of [issue preclusion], an issue was actually litigated in a prior proceeding *if it was properly raised, submitted for determination, and determined in that proceeding*" (italics added)].) Here, the issue of the dollar amount of the premium was not decided by the ALJ; the Ninth Circuit's statement in *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund* regarding what it believed the ALJ had decided was provided merely as background.

Our review of the collateral proceedings between ReadyLink and SCIF makes clear that the trial court erred in concluding that the issues raised by SCIF's collection action and by ReadyLink's affirmative defenses to that action had been litigated and decided in a prior action.

> b. *Contrary to SCIF's assertions, ReadyLink could not have raised as "claims" in the prior administrative proceeding those matters that form its affirmative defenses in this action*

The trial court granted SCIF's motion for judgment on the pleadings based on the erroneous conclusion that "[t]he amount [of premium] owed [by ReadyLink] is precisely what was determined in the underlying administrative decision and appeals." SCIF contends that if these issues were not in fact previously determined in the underlying administrative proceeding, it is because "ReadyLink disregarded its opportunity to dispute the premium owed before the Insurance Commissioner" (boldface & some capitalization omitted). SCIF thus suggests that ReadyLink should be barred from litigating its affirmative defenses in response to SCIF's breach of contract action against it

50

on the basis that ReadyLink could have, and should have, litigated before the ALJ the issue of the amount of premium due. SCIF asserts that ReadyLink "was required to exhaust its administrative remedies, which included the opportunity to dispute the premium owed, before the Department of Insurance, when it brought its initial appeal," but ReadyLink "affirmatively chose not to do so."

SCIF is incorrect in suggesting that ReadyLink should be barred from litigating the amount of premium due (apart from that aspect of the premium that involves including the per diem payments as payroll for premium calculation purposes, which *has been* litigated and decided), or whether SCIF is not entitled to full payment of the premium claimed, as alleged in ReadyLink's affirmative defenses. SCIF appears to be suggesting that the prior administrative action has preclusive effect as to all other issues raised by ReadyLink in this case because, SCIF maintains, ReadyLink was required to exhaust its administrative remedies by raising the other issues in the administrative proceeding before the Insurance Commissioner, and its failure to do so precludes it from raising these issues now. Although causes of action or defenses that could have been brought in an earlier action may be barred because they are subject to claim preclusion, "a prior judgment generally does not bar a subsequent claim if the matter could not have been raised or litigated in the earlier action." (*Hong Sang*, *supra*, 20 Cal.App.5th at p. 491, italics omitted.) Despite SCIF's suggestions to the contrary, SCIF has presented no authority to demonstrate that ReadyLink could have actually litigated the issues bearing on whether SCIF calculated the correct premium amount, or issues regarding its affirmative defenses in the administrative proceeding.

51

"Administrative agencies have only such powers as have been conferred on them, expressly or by implication, by Constitution or statute." (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 12.) The record in this case reveals Insurance Code sections 11753.1 and 11737, subdivision (f) as possible statutory bases for ReadyLink's appeal to the Insurance Commissioner of SCIF's audit decision to include the per diem payments as payroll. Both of these statutory provisions make clear that only the matters identified in those statutory provisions may be appealed to, and determined by, the Insurance Commissioner.[27] Neither of these provisions indicates that the Insurance Commissioner

---

[27]  Insurance Code section 11753.1 provides that the Insurance Commissioner has the authority to consider appeals from a "decision, action, or omission of the rating organization," or from "the reclassification pursuant to this section [i.e., a change in the classification assignment that results in an increased premium]." That statute provides:

> "(a) Any person aggrieved by any decision, action, or omission to act of a rating organization may request that the rating organization reconsider the decision, action, or omission. If the request for reconsideration is rejected or is not acted upon within 30 days by the rating organization, the person requesting reconsideration may, within a reasonable time, appeal from the decision, action, or omission of the rating organization. The appeal shall be made to the commissioner by filing a written complaint and request for a hearing specifying the grounds relied upon. If the commissioner has information on the subject appealed from and believes that probable cause for the appeal does not exist or that the appeal is not made in good faith, the commissioner may deny the appeal without a hearing. The commissioner shall otherwise hold a hearing to consider and determine the matter presented by the appeal.

> "(b) Any insurer adopting a change in the classification assignment of an employer that results in an increased premium shall notify the employer in writing, or if the insurance was transacted through an insurance agent or broker, the insurer shall notify the agent or broker who shall notify the employer in writing of the change and the reasons for the change. Any employer receiving this notice shall

52

has the authority to consider the common law breach of contract and other collection claims raised by SCIF in this action, or to consider the equitable and other affirmative defenses to SCIF's claims asserted by ReadyLink. We have been directed to no authority that would suggest that the Insurance Commissioner has any authority to consider other aspects of a premium calculation dispute, beyond the specific matters identified in

> have the right to request reconsideration and appeal the reclassification pursuant to this section. The notice required by this section shall inform the employer of his or her rights pursuant to this section. No notification shall be required when the change is a result of a regulation adopted by the Department of Insurance or other action by or under the authority of the commissioner."

Insurance Code section 11737, subdivision (f) authorizes an appeal to the Insurance Commissioner to allow the Commissioner to "review the manner in which [a] rating system has been applied in connection with the insurance afforded or offered" to the insured. That statute provides:

> "(f) Every insurer or rating organization shall provide within this state reasonable means whereby any person aggrieved by the application of its filings may be heard by the insurer or rating organization on written request to review the manner in which the rating system has been applied in connection with the insurance afforded or offered. If the insurer or rating organization fails to grant or reject the request within 30 days, the applicant may proceed in the same manner as if the application had been rejected. Any party affected by the action of the insurer or rating organization on the request may appeal, within 30 days after written notice of the action, to the commissioner who, after a hearing held within 60 days from the date on which the party requests the appeal, or longer upon agreement of the parties and not less than 10 days' written notice to the appellant and to the insurer or rating organization, may affirm, modify, or reverse that action. If the commissioner has information on the subject from which the appeal is taken and believes that a reasonable basis for the appeal does not exist or that the appeal is not made in good faith, the commissioner may deny the appeal without a hearing. The denial shall be in writing, set forth the basis for the denial, and be served on all parties."

sections 11753.1 and 11737, subdivision (f). In fact, case law and the records in this case suggest otherwise.

For example, courts have rejected the idea that an insured must first exhaust administrative remedies through an appeal to the Insurance Commissioner before asserting claims of breach of contract against its insurer, including breaches that place the amount of premium in dispute. (See *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 199 (*Lance Camper*); *Tricor California, Inc. v. State Compensation Ins. Fund* (1994) 30 Cal.App.4th 230; *Security Officers Service, Inc. v. State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887.) "The requirement of exhaustion of administrative remedies is founded on the theory that the administrative tribunal is created by law to adjudicate the issue sought to be presented to the court, and the issue is within its special jurisdiction. If a court allows a suit to go forward prior to a final administrative determination, it will be interfering with the subject matter of another tribunal. . . . [¶] [However,] [t]he mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an administrative remedy unless the statute or regulation under which that power is exercised establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1552–1553.) In the workers' compensation insurance arena, "[t]he [Insurance] Commissioner's supervisory and regulatory power over the insurance industry does not give him power to adjudicate all insurance disputes—such as . . . one [that] involves an alleged breach of contract with a demand for monetary damages—

54

unless persuasive legislative intent to grant this authority can be identified." (*Lance Camper*, *supra*, at p. 199.) The *Lance Camper* court found no persuasive legislative intent to grant authority to the Insurance Commissioner to consider an insured's causes of action challenging the conduct of the insurer with respect to the insurance contract between them, including a challenge that the amount of the premium was too high as a result of the insurer's wrongful conduct. The *Lance Camper* court thus determined that the insured's claims were "not . . . subject to administrative review." (*Id.* at p. 203.)

Further, the Insurance Commissioner has concluded that he does not have authority to consider breach of contract issues between insurers and insureds. In *In the Matter of the Appeal of SportsMobile West, Inc.* (2007) file No. AHB -WCA-06-7 (available at <http://www.insurance.ca.gov/0250-insurers/0500-legal-info/0600-decision-ruling/0100-precedential/intro-06-07.cfm>), the Insurance Commissioner specifically stated that "SCIF correctly argues that the Commissioner does not have jurisdiction to

decide the rights and duties of parties to a contract." (*Id.* at p. 4, fn. 10.)[28] A number of documents in the record in this case further demonstrate not only that the Insurance Commissioner did not view himself as having the authority to determine a contract dispute between the parties, but that the Insurance Commissioner expressed to the parties that his jurisdiction was indeed limited. For example, when ReadyLink initially appealed

---

[28] SCIF suggests that other precedential decisions of the Insurance Commissioner demonstrate that the Insurance Commissioner does decide matters regarding the amount of premiums due under insurance contracts. SCIF relies on *In the Matter of the Appeal of Advanced Fuel Filtration Systems* (2004) file No. AHB-WCA-03-45 (*Advanced Fuel*) and *In the Matter of the Appeal of E. M. Machining* (2001) file No. ALB-WCA-00-30 (*E. M. Machining*), of which we have granted judicial notice, to suggest that the "Commissioner deliberates and decides premium issues when they are raised before it." These authorities do not support SCIF's position. *Advanced Fuel* involved the "sole issue" described as follows: "Whether SCIF's retroactive assignment of classification codes 8018 (stores - wholesale), 7219 (truckmen), 6218/6220 (excavation) and 4511 (analytical or testing laboratories) to AFFS's policies is contrary to Insurance Code sections 11753.l(b) and 11753.2." (*Advanced Fuel*, *supra*, at p. 2, Proposed Decision of ALJ.) Thus, as in this case, the Insurance Commissioner was considering whether SCIF had properly applied relevant statutory and regulatory rules in conducting its audit. The Insurance Commissioner, through an ALJ, made a determination that SCIF had properly applied the classification codes in question, and acknowledged that the decision would result in an increase in premiums for the insured. The ALJ did not, however, decide the contractual issue of what final premium amount was due, or whether the employer would have any valid defenses to a breach of contract action. Similarly, *E. M. Machining* involved "the question whether the WCIRB properly assigned classification 3643 (1), 'Electric Power or Transmission Equipment Mfg.–N.O.C.' to EMM's operations by analogy, pursuant to the Standard Classification System, Part 3, of the California Workers' Compensation Uniform Statistical Reporting Plan ('Plan')." *(E. M. Machining*, *supra*, at p. 2.) Again, the Insurance Commissioner, through an ALJ, considered whether the relevant regulatory framework was being applied correctly. These cases do not demonstrate what SCIF appears to suggest by implication— i.e., that the Insurance Commissioner may decide *any* premium issue raised before it, including whether the premium accurately reflects the contract between the parties, based on issues unrelated to the application of the relevant statutory and regulatory rules.

to the Insurance Commissioner regarding SCIF's application of the USRP rules to determine ReadyLink's payroll for the 2005 policy year, the Department of Insurance sent ReadyLink a letter, dated April 29, 2008, in which an employee of the Department of Insurance informed ReadyLink's representative that "[t]he Insurance Commissioner is authorized by the California Insurance Code to investigate allegations of unlawful activities by licensees. The Department will initiate an investigation into your complaint against the licensee *to determine whether the licensee has violated the California Insurance Code*. The Department's regulatory activities will be separate from, *and will not include, the mediation or negotiation of your complaint*. However, if the Department determines from its investigation that your dispute resulted from the licensee's failure to comply with the code, the Department can request that the licensee take corrective action to achieve compliance." (Italics added.)

Later, in the letter sent from the WCIRB to the ALJ assigned to ReadyLink's appeal, the WCIRB states:

> "A review of the record indicates that the appellant, ReadyLink Healthcare, Inc. (ReadyLink) is appealing the State Compensation Insurance Fund's (State Fund)[ ] audit of Policy no. 1596579, effective for the period September 1, 2005 to September 1, 2006. ReadyLink is appealing the State Fund's determination that the monies ReadyLink paid to its employees as 'per diem' should be included as payroll for premium computation purposes. ReadyLink argues that the payments in question are 'government per-diem amounts' and that because ReadyLink 'does not set them, modify them, negotiate them, nor vary them among nurses,' the monies meet the criteria for a reasonable 'stipulated amount,' and therefore should not be included as payroll.
>
> "In its February 28, 2008 letter, the State Fund argues that 'the amounts listed as per diem have not yet been shown to be

57

reasonable' and therefore must be included as payroll for premium computation purposes. Indeed, the State Fund states that 'proposing that a vast majority of the nurses' payroll is for unverified travel expenses, is not reasonable and can not [*sic*] be accepted."

"Preliminarily, it should be noted that the WCIRB's jurisdiction in this matter is limited to ensuring that the required Unit Statistical Report [USRP] both accurately reflects the policy's payroll and loss experience, as well as reports all such experience under the appropriate standard classification. *However, the WCIRB does not have the authority to make determinations in matters concerning [the] basis of premium disputes between insurers and policyholders. At most, the WCIRB would be able to provide expertise with respect to the <u>California Workers' Compensation Uniform Statistical Reporting Plan's</u> [i.e., the USRP's] provisions regarding the basis of premium for workers' compensation purposes.*" (Italics added; underscoring added to demonstrate italics in original.)

Further, the ALJ in this case specifically informed the parties that she was not determining, and in fact *could not* determine, whether the ultimate premium charged by SCIF was correct. The ALJ specifically stated, "I don't get to say what the premium should be . . . because I don't actually know how it's calculated . . . ." The ALJ also expressed her inability "to rule on" whether ReadyLink would have to pay the premium determined by SCIF, or whether there might be "compromises made down the line." The ALJ clearly did not view her role as determining the accuracy of SCIF's final premium calculation.

Despite all of this, SCIF argues on appeal that ReadyLink was required to exhaust its administrative remedies by asking Insurance Commissioner to determine the correctness of SCIF's calculation of the premium amount and the validity of ReadyLink's affirmative defenses, and that its failure to do so bars it from litigating those issues now. The authority on which SCIF relies in claiming that ReadyLink failed to exhaust its

58

administrative remedies does not support SCIF's assertion.  SCIF relies on

*P. W. Stephens, Inc. v. State Compensation Ins. Fund* (1994) 21 Cal.App.4th 1833

(*P. W. Stephens*), for the proposition that "a policyholder seeking relief from excessive

surcharges must first exhaust administrative remedies before resorting to the courts."

However, *P. W. Stephens* is inapposite.  The narrow questions before the court in

*P. W. Stephens* were whether the SCIF was permitted, *by statute or regulation*, to impose

a *surcharge* on its premiums, and whether arbitrary, exorbitant, discriminatory or unfair

*surcharges* were subject to administrative review.  Notably, the Legislature has

"specifically required that workers' compensation insurers, including SCIF, not impose

any 'surcharges' or maintain reserves that are 'unfairly discriminatory' " through Insurance

Code section 11737.5.  (*P. W. Stephens*, at p. 1839.)  The *P. W. Stephens* court thus

concluded that the Legislature had entrusted the Insurance Commissioner to ensure that

any surcharges imposed by insurers "are fair and reasonable."  (*Id.* at p. 1840.)

The dispute in *P. W. Stephens* involved what amounted to a rate-setting dispute,

for which administrative exhaustion was a prerequisite to resort to the courts.  (See *State

Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188, 199 [distinguishing

dispute at issue in *P. W. Stephens* from contractual dispute initiated by SCIF in which it

sought additional premiums from an employer based on SCIF's decision to include

independent contractors as employees for purposes of calculating premium].)  "There is

good reason for deferring to an initial agency determination:  the propriety of premium

*rates and surcharges* involve factors and methodology which require quasi-legislative

action involving expertise in the subject matter, and courts have traditionally given

deference to such agency determinations [citation]." (*Ibid.*) Indeed, the *P. W. Stephens* court specifically relied on the fact that the Insurance Commissioner's expertise was needed in the area of *rate and surcharge* setting, areas that are specifically designated by statute as requiring the approval of the Insurance Commissioner, as well as the Insurance Commissioner's creation of a mechanism by which a surcharge could be reviewed, in concluding that administrative exhaustion was required with respect to the dispute at issue there. "Such administrative review is appropriate because of the expertise of the Commissioner and his agency resources and because of the complexity of the matter presented. A determination of whether or not an overall premium, or a surcharge component of a premium, is *unfair and discriminatory* [as was specifically prohibited under a then-newly-enacted Insurance Code provision] requires a comprehensive understanding of the manner in which the merit rating system schedules are generally applied in the workers' compensation insurance business. Additionally, a reviewing body requires familiarity with the manner in which surcharges are generally applied, and familiarity with the particular occupations or businesses of the insureds in question. Such expertise clearly resides with the Rating Bureau and with the office of the Commissioner and certainly not initially with our trial courts." (*P. W. Stephens*, *supra*, 21 Cal.App.4th at p. 1842.) In contrast, issues of contract interpretation, including whether an insurer *accurately* calculated a premium under the contract, and the application of equitable defenses to the enforcement of a contract, do not involve considerations that fall uniquely within the Insurance Commissioner's expertise. *P. W. Stephens* thus does not support the

60

conclusion that ReadyLink was required to exhaust administrative remedies before litigating the issues that arise from this contract dispute.

We therefore reject SCIF's suggestion that we may affirm the trial court's ruling on SCIF's motion for judgment on the pleadings on the ground that, to the extent that we have concluded that the issue of the amount of premium due or issues regarding the validity of ReadyLink's affirmative defenses were not in fact determined in the prior administrative proceeding, those issues could have been determined if ReadyLink had properly raised them, and the prior administrative proceeding should therefore act as a bar to ReadyLink raising them in this case under a theory of claim preclusion (see *Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1098 [principles of res judicata may be used to bar a party from asserting claims that "could have been litigated" in a prior proceeding]). The administrative proceeding involved the question whether SCIF had properly interpreted and applied the USRP rules regarding payroll. The question whether SCIF properly applied the USRP rules in including ReadyLink's per diem payments as payroll was well within the Insurance Commissioner's expertise and jurisdiction. Although the answer to that question affected the calculation of the ultimate premium due under the contract between SCIF and ReadyLink, there is no basis to conclude that other matters going to the accuracy of SCIF's premium calculations under the contract—matters not related to issues that involve application of the regulatory rules or rate filings and are therefore within the Insurance Commissioner's adjudicatory jurisdiction—or matters related to whether SCIF

61

can succeed on its contract claim could have been, raised with the Insurance Commissioner.

C. *The trial court's denial of ReadyLink's discovery motions was based on an erroneous conclusion regarding the preclusive effect of the prior proceedings*

ReadyLink challenges the trial court's order denying its motions to compel discovery from SCIF. We review a trial court's ruling on a motion to compel discovery for abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) However, " ' "[t]he scope of [a court's] discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." ' [Citation.] An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Williams v. Superior Court* (2017) 3 Cal. 5th 531, 540.)

The trial court denied ReadyLink's motions to compel further discovery from SCIF solely on the ground that ReadyLink was "seek[ing] to relitigate the exact same issues already addressed before the Insurance Commission and the Court of Appeal." As we have explained, the prior administrative and judicial proceedings did not decide the issues that SCIF raises in its collection action.

We agree with ReadyLink that because the current action involves factual and legal questions different from the issues that were decided in the prior administrative and

62

judicial proceedings, ReadyLink is entitled to discovery related to those questions.[29]  We therefore conclude that the trial court erred in denying ReadyLink's motions to compel and we reverse that order.

IV.

DISPOSITION

The judgment of the trial court is reversed.  The trial court's order denying ReadyLink's motions to compel further discovery is also reversed.  ReadyLink is entitled to costs on appeal.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

---

[29]     In other words, ReadyLink is entitled to discovery going to issues in this litigation that have not been determined to finality.  Issues that have been previously determined to finality and to which ReadyLink is not entitled to discovery include:  whether including ReadyLink's per diem payments to nurses as payroll complied with the USRP, whether the Insurance Commissioner's interpretation of the USRP per diem rules and application to the facts of ReadyLink's per diem payment structure constituted a "new regulation" that could not be imposed without notice and an opportunity for hearing, whether the Insurance Commissioner's decision was impermissibly retroactive, whether the Insurance Commissioner exceeded his authority by converting the administrative proceeding into a rate controversy, and whether the IRS regulations preempt application of the USRP, such that in interpreting the USRP the Insurance Commissioner must adopt the IRS standards or rules.